# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HOME SEMICONDUCTOR CORPORATION,

                Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., *et. al.,*

                Defendants.

Civil Action No. 13-2033-RGA

JURY TRIAL DEMANDED

PUBLIC VERSION FILED:
MAY 29, 2019

## HOME SEMICONDUCTOR CORPORATION'S OPPOSITION TO SAMSUNG'S MOTION TO DISMISS FOR LACK OF STANDING

TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION. .................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS. .......................................1

III.    SUMMARY OF ARGUMENT ...........................................................................1

IV.     STATEMENT OF FACTS ...................................................................................2

        A.      Corporate Structure of the Home Entities. ............................................2

        B.      History of the Patent Acquisitions ........................................................3

        C.      Subsequent Agreements Between Home and ProMOS. .........................5

V.      ARGUMENT. ......................................................................................................6

        A.      The Limited Rights Promos Has in the Asserted Patents Do Not Defeat
                Standing. .................................................................................................6

                1.      The 2013 PTLA Does Not Provide ProMOS Significant Control
                        Over Enforcement and Litigation Activities. ............................8

                2.      ProMOS's ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ Does not Defeat
                        Plaintiff's Standing..................................................................12

                3.      The Retained ▒▒▒▒▒▒▒▒▒ Is Not Evidence Of Plaintiff's
                        Lack of All Substantial Rights. ...............................................13

                4.      The Agreement in Diamond Was Materially Different from the
                        Agreement in This Action, and Diamond does not support
                        Samsung's relief. .....................................................................13

        B.      Ownership of, and all substantial rights to, the Asserted Patents were
                Properly Transferred to Plaintiff. ........................................................14

        C.      Any Dismissal of the Case Based on Failure to Join "HSI" Should be
                Without Prejudice ................................................................................17

VI.     CONCLUSION. .................................................................................................18

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbot Labs v. Diamedix Corp.*,
  47 F.3d 1128 (Fed. Cir. 1995)..........................................................................................9, 12

*Aevoe Corp. v. AE Tech Co., Ltd*,
  13 F.Supp. 1072 ...................................................................................................................16

*Alfred E. Mann Found. v. Cochlear Corp.*
  604 F.3d 1354 (Fed. Cir. 2010).............................................................................................7

*Diamond Coating Technologies, LLC. v. Hyundai Motor Am.*,
  823 F.3d 615 (Fed. Cir. 2016)..................................................................................2, 8, 9, 13

*Diamond Coating Technologies, LLC v. Hyundai Motor America*,
  2015 WL 2088892 (C.D. CA April 1, 2015) .............................................................9, 10, 13

*Fieldturf, Inc. v. Southwest Recreational Indus., Inc.*,
  357 F.3d 1266 (Fed. Cir. 2004).............................................................................................17

*Intuitive Surgical, Inc. v. Computer Motion, Inc.*,
  214 F.Supp. 2d 433 (D.Del. 2002) .......................................................................................10

*Kalman v. Berlyn Corp.*,
  914 F.2d 1473 (Fed. Cir. 1990).............................................................................................12

*Lincoln Imports, Ltd., Inc. v. Santa's Bext Craft, Ltd.*,
  2008 WL 2754530 (S.D.Tex. 2008)......................................................................................16

*Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.*,
  814 F.3d 1343 (Fed. Cir. 2016).....................................................................................6, 7, 12

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
  676 Fed. App'x 967 (Fed. Cir. 2017) ...................................................................................18

*Special Happy, Ltd. v. Lincoln Imports, Ltd., Inc.*,
  2011 WL 2650184 (C.D.CA).................................................................................................16

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
  944 F.2d 870 (Fed. Cir. 1991)...........................................................................................7, 13

ii

## I.      INTRODUCTION

Plaintiff Home Semiconductor Corporation is a Delaware corporation ("Home Delaware") and is a wholly owned subsidiary of Home Semiconductor Corporation, a Samoa corporation (hereinafter "HSC Samoa"). Through a pair of patent assignments, Home Delaware obtained all rights in the asserted patents and thus standing to bring this action without naming any other co-plaintiffs. Despite this being clear from the relevant assignments, and after more than five years of litigation, Samsung seeks dismissal on the grounds that Home Delaware lacks standing. Samsung's motion should be denied.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Home Delaware largely agrees with Samsung's statement of the Nature and Stage of the Proceedings, with the following additions. First, as noted in Samsung's brief at footnote 2, Samsung filed a motion for leave to amend its answer, which was granted by the Court. DI 180. Second, Home Delaware filed a motion for leave to amend its complaint to allege infringement of U.S. Patent No. 6,146,997 under 35 U.S.C. §271(g) by the non-U.S. Samsung defendants that infringe the '997 patent. DI 108. On May 16, 2019, the motion was granted (DI 187), and the amended complaint (DI 188) was filed. Samsung has advised Plaintiff's counsel that it intends to file objections to Judge Fallon's order granting the motion to file the amended complaint.

## III.    SUMMARY OF ARGUMENT

Home Delaware owns the patents in suit and has standing to sue. Samsung raises two arguments, neither of which has merit. The first is that the assignment from ProMOS, the original owner of the patents, to HSC Samoa does not confer standing because ProMOS retained significant rights in the patents that make it a necessary party to this action. Not so. The assignment agreement between ProMOS and HS[C] Samoa transferred all substantial rights in

1

the patents to HS[C] Samoa.[1]  The minimal retained interests – ███████████████

████████████████████████████████████████████████████

██████ – are insufficient to deprive Home Delaware of standing.  The facts of the present

agreement are far different from those in *Diamond Coating Technologies, LLC. v. Hyundai

Motor Am.*, 823 F.3d 615 (Fed. Cir. 2016), the primary authority upon which Samsung relies.

Second, Samsung argues that a typographical error – the replacement of "Corporation"

with "Incorporated" in certain corporate documents – deprives Home Delaware of standing.

Certain of the relevant documents, including the original assignment from ProMOS, were made

in the name of Home Semiconductor, Inc. Samoa (hereinafter "HSI Samoa"), not Home

Semiconductor Corporation Samoa.   This mere typographical error does not defeat standing

particularly where HSI Samoa does not exist and has never existed.   The replacement of

"corporation" with "incorporated" does not deprive Home Delaware of standing in this action.

Samsung's motion should be denied.

## IV.    STATEMENT OF FACTS

Samsung's motion is filled with inflammatory rhetoric about perceived conspiracies

surrounding the parties.   These "facts" are irrelevant to the resolution of Samsung's motion.

Home Delaware provides the following statement focused on the relevant facts.

### A.    Corporate Structure of the Home Entities

There are only two entities in the "Home" corporate structure:  Home Semiconductor

Corporation (Delaware) and Home Semiconductor Corporation (Samoa).  DI 177, Ex. 16; Ting.

---

[1] The 2013 PTLA defines "Home Semiconductor, Inc. Samoa" as HOME.  DI 177, Ex. 8 at HSC0001026.  In this opposition, Home Delaware is using the following naming conventions to identify entities referred to in documents:
HS[C] Samoa – document identifies Home Semiconductor, Inc. Samoa, an entity that does not exist, and Home Delaware contends the intended party is Home Semiconductor Corp. Samoa, and our shorthand reflects this.
HSC Samoa – document identifies party as Home Semiconductor Corp. Samoa.

ME1 30498276v.1

Decl. Ex. B.   Plaintiff Home Delaware is a wholly owned subsidiary of HSC Samoa.  DI 177,

Ex. 21 at 44:20-45-9.  Both of these entities are ███████████████.  DI 177, Ex. 16; Ting.

Decl. Ex. B.

Samsung's motion references a third putative entity – Home Semiconductor, Inc.

(Samoa) (hereinafter "HSI Samoa").  DI 175 at 4.  No such entity exists.  Ting Decl., Ex. A at

123:14-17**.**  Nor has any such entity ever existed to the knowledge of Home's principal or its

attorneys.  Ting Decl., Ex. A at 123:14-17, Ex. C at 23:12-21.  While certain documents refer to

HSI Samoa, this is a typographical error, and all references to HSI Samoa should refer to, and be

understood to mean HSC Samoa.

### B.   History of the Patent Acquisitions

The two remaining patents in suit, U.S. Patent No. 5,452,261 and U.S. Patent No.

6,146,997 were originally assigned to Mosel Vitelic, Inc. by their respective inventors.  DI 177,

Ex. 4 and 5.  These patents were then assigned by Mosel Vitelic to ProMOS Technologies, Inc.

DI 177, Ex. 6.  None of these transactions are disputed.

On February 27, 2013, HS[C] Samoa acquired the asserted patents from ProMOS

Technologies, Inc.  DI 177, Ex. 8.  This took place through the Patent Transfer and Licensing

Agreement (hereinafter "the 2013 PTLA") dated February 27, 2013.  DI 177, Ex. 8.   The 2013

PTLA includes a section ████████████████ that transferred title in the patents-in-suit

as follows:



DI 177, Ex. 8 at HSC0001026 (emphasis added).

The 2013 PTLA included additional terms relevant to the present opposition.  First, it included " ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ "  DI 177, Ex. 8 at HSC0001026.

The 2013 PTLA also required ████████████████████████ to ProMOS by

HS[C] Samoa ████████████████.  *Id.* at HSC0001027.  ████████████████

████████████████.  Ting Decl., Ex. D at HSC0001467.  In addition, the 2013 PTLA

included ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████.  *Id.*

Along with the 2013 PTLA, a side letter was executed further setting forth the

relationship between HS[C] Samoa and ProMOS.  DI 177, Ex. 8 at HSC0001033-34.  With

respect to ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████.[2]  *Id.*  Other than ██████████████████████

██████████████████████, the side letter does not provide ProMOS with ████████████

████████████████████████████.  *Id.*

The 2013 PTLA and the 2013 side letter do not give ProMOS ████████████████

████████████████████████.  DI 177, Ex. 8.  Nor does ProMOS have any right to ████████

████████████████████████████████████████████████████

---

[2] Based on public documents, ProMOS had business relationships with both Elpida and SK Hynix.  Ting Exs. G and H.

████████████.  *Id.*  Beyond the references to ██████████████████████,

ProMOS also did not receive any ███████████████████████.  *Id.*

ProMOS executed the documents assigning the patents in suit, and the documents were

submitted for recording in the United States Patent and Trademark Office.  DI 177, Exs. 9 & 10.

Subsequently, HSC Samoa assigned the patents-in-suit to Home Delaware.  DI 177,  Ex.

11.  These documents were recorded in the USPTO on January 20, 2015.  *Id.*

**C.**    **Subsequent Agreements Between Home and ProMOS**

On  March  25,  2015,  HS[C]  Samoa  and  its  affiliates  signed  a  Patent  Cooperation

Agreement (PCA) with ProMOS (hereinafter "the 2015 PCA").  DI 177, Ex. 13.  This agreement

provides  that  HS[C]  Samoa  and  its  Affiliates  ████████████████████████

█████████████.  *Id.*  Under the 2015 PCA, HS[C] Samoa agreed to "██████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████."  *Id.* at HSC0000304.  HS[C] also agreed to ██████████

███████████████████████████████.  *Id.*  In connection with ██████████

██████████████████████████████████.  As consideration for

HS[C]'s services and obligations, the PCA █████████████████████████

██████████████████████████.  *Id.* at HSC0000305-06.  This included █████

██████████████████████████████████████████

█████████████.  *Id.* at HSC0000305.  ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

ME1 30498276v.1



█████. *Id.* at 0000305-306.

Pursuant to the PCA, HSC Samoa and ProMOS entered into negotiations with ██████ that resulted in ███████████████████████████. DI 177, Ex. 15 at HSC0000313.   Separately, HS[C] Samoa and ██████ signed a ██████ covenant not to sue with respect to the patents owned by Plaintiff.   *Id.* at HSC0000313-319.   After ██ █████████████████████████████████████████████████████ ███████████████████████. DI 177, Ex. 13 at HSC0000305-306, Ex. 15 at HSC0000314.

## V.   <u>ARGUMENT</u>

Home Delaware is the assignee and owner of all substantial rights in the asserted patents. As such, Plaintiff has the requisite standing to bring this current lawsuit alone.   *Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.,* 814 F.3d 1343, 1351 (Fed. Cir. 2016).   The limited rights granted to ProMOS by HS[C] Samoa are insufficient to make ProMOS a necessary party to this action and are of a character that the Federal Circuit has held are insufficient to defeat a patent owner's standing.     Similarly, the mere typographic error – replacing "corporation" with "incorporated" should not deprive Home Delaware of standing, particularly where no entity named Home Semiconductor Incorporated Samoa actually exists.   Samsung's arguments to the contrary are based on a simple typographical error, not some mythical scheme to obscure the true owner of these patents.

### A.   <u>The Limited Rights Promos Has in the Asserted Patents Do Not Defeat Standing</u>

Samsung argues that ProMOS did not fully assign all right, title and interest in the patents-in-suit to Home Delaware's corporate parent.   This is simply wrong.   The Patent Transfer

and License Agreement between Promos and HS[C] Samoa clearly states that " ██████████

████████████████████████████████████████████████████████████.

DI 177, Ex. 8 at HSC0001026.  This is consistent with the assignment document filed with the

USPTO, which states that "said sale, conveyance, assignment and transfer includes, without

limitation, all rights to enforce, assert and sue for past, present and future infringement of the

Patents, and all rights to recover for past, present and future damages related to the patents."  *Id.*

at HSC0000328.

A patent is a bundle of rights that may be divided, assigned, or retained in whole or in

part.  *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,* 944 F.2d 870, 875 (Fed. Cir.

1991).  When a sufficiently large number of these rights reside in the possession of one

individual, courts "refer to that individual as the owner of the patent, and that individual is

permitted to bring suit in his own name."  *Alfred E. Mann Found. v. Cochlear Corp.*  604 F.3d

1354, 1359 (Fed. Cir. 2010).  One important factor is whether the agreement gives or retains the

right to sue.  *Id.* at 1361.  Another important factor is whether the assigning party retains the

right to issue licenses without the approval of the new owner, in effect providing a veto to any

litigation or licensing brought by the patent owner.  *Luminara,* 814 F.3d at 1347-1349.  Viewed

through this prism, ProMOS has divested itself of legal title to the patent and a substantial

number of other important rights related to the patents-in-suit.  ProMOS has: no right to bring

suit in its own name, whether or not HSC Samoa or Home Delaware make any effort to license

or otherwise enforce the transferred patents; no right to issue licenses or sublicenses to the

patents-in-suit; no right to control any litigation brought by Home Delaware; no right to assign,

sell or otherwise transfer; no reversionary right;  no right to force Home Delaware to sue any

specific company; and no obligation to pay maintenance fees and thus no right to let the patents expire.

Samsung raises three points to support its argument, but this limited combination of "retained rights" does not make ProMOS a necessary party or divest Home Delaware of standing.

### 1.    The 2013 PTLA Does Not Provide ProMOS Significant Control Over Enforcement and Litigation Activities

Samsung first argues that ProMOS retains "significant control" over Home Delaware's enforcement activity.  Not so.

Samsung's reliance on *Diamond Coating Techs., LLC v. Hyundai Motor Am.,* 823 F.3d 615 (Fed. Cir. 2016) is misplaced.  *Diamond* involved a set of rights that are significantly more restrictive than those possessed by ProMOS.  In *Diamond,* Sanyo (the transferor) and Diamond (the transferee) entered into a Patent Assignment and Transfer Agreement ("PATA") and an Ancillary Agreement that Diamond claimed provided it sufficient ownership rights for Diamond to bring suit against Hyundai without joining *Sanyo.*  832 F.3d at 618.  The Federal Circuit held that Sanyo's retained rights defeated Diamond's standing to bring suit alone, because they showed that Sanyo retained control of licensing or litigation activities and thus demonstrated that the patent had not been effectively assigned to Diamond.  *Id.* at 620.  In conducting its analysis, the Federal Circuit relied on the following as evidence of Sanyo's significant control over Diamond's enforcement and licensing activities:  1). The PATA conditioned Diamond's litigation and enforcement activities on *Sanyo's* best interests, 2).  The PATA cabined Diamond's authority to license the patents-in-suit by requiring Diamond to obtain consent from Sanyo prior to licensing the patents-in-suit with any other patents owned by Diamond, and 3). Sanyo provided a list of companies to Diamond that Sanyo believed represented licensing

8

opportunities, as well as a list of companies which Diamond "reserve[d] the right not to assert the [patents-in-suit] against."  Diamond was restricted in its ability to remove companies from the target list Sanyo provided and similarly restricted in adding companies to the list of companies it did not have to sue, effectively giving Sanyo control over Diamond's enforcement actions.      *Id.* at 620-621; *Diamond Coating Technologies, LLC v. Hyundai Motor America*, 2015 WL 2088892, *6 (C.D. CA April 1, 2015) ("It is not difficult to conclude that Sanyo retained influence of identification of targets of enforcement, while the threat of default spurred [Diamond] to quickly act against such targets.").

The limited rights retained by ProMOS under the 2013 PTLA and letter guarantee, however, are significantly less than those in *Diamond*.  First, unlike the PATA at issue in *Diamond*, the 2013 PTLA ███████████████████████████████████ ████████████████.  DI 177, Ex. 8.  In fact, the 2013 PTLA only requires ███████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████.  Neither the 2013 PTLA nor the 2013 letter guarantee require ████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████.  Home Delaware can do that in its sole discretion.

The fact that Home Delaware needs ████████████████████████████████████ ███████████████████████████████████ is far less restrictive than the agreements in *Diamond*.  While Diamond was effectively provided with a predetermined list of companies that it had to sue in order to comply with the PATA and Ancillary agreement, the 2013 PTLA and letter guarantee ██████████████████████████████████████████████████ ████████████████████████████████████████.  *Diamond*, 823 F.3d at 621;

*Diamond,* 2015 WL 2088892 at *6. This minor restriction, applicable to ████████████

████████████████████████████, is no more restrictive than ██████████████████████

had previously been licensed to the asserted patents, which the Federal Circuit has indicated is

not fatal to a transferee's standing to bring suit alone. *See, e.g., Abbot Labs v. Diamedix Corp.,*

47 F.3d 1128, 1129-31 (Fed. Cir. 1995); *Intuitive Surgical, Inc. v. Computer Motion, Inc.,* 214

F.Supp. 2d 433, 436 n.4, 440 (D.Del. 2002).

　　Samsung also points to negotiations that resulted in a patent license agreement between

ProMOS and ████████ concerning *patents owned by ProMOS,* and a covenant not to sue

between HS[C] Samoa and ████████ ("CNS"), as evidence of ProMOS's control. DI 175 at 14.

At the outset, of course, ProMOS can enter into negotiations to license its own patents. The fact

that ProMOS did so and entered a license to its own patents does not give it control over the

patents at issue in this action. Indeed, these negotiations are irrelevant to the issues presented in

Samsung's motion.

　　Samsung does not contend that the ProMOS████████ license conveys any rights in

Home's patents to ████████. Instead, it argues that a covenant not to sue between HS[C] Samoa

and ████████ demonstrate that ProMOS somehow has control over Home Delaware's decisions

to enforce its patent. This is incorrect. The covenant not to sue ████████████████████

████. DI 177, Ex. 15 at HSC000314 (█████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████). Instead it provided the following:

- ████████████████████████████████████████████████

  ████████;

- ██████████████████████████████████████████████████

   ██████████████████████████████████

*Id.* at HSC0000314. The agreement is nothing more than a standstill agreement, and the ████

████████████████████. This cannot demonstrate control by ProMOS over Home

Delaware's licensing.

Samsung also argues that because the covenant was conditioned on ████████████████

████████████████████, and that Home Delaware thus lacked ██████████████

██████████████████████████, that ProMOS controlled Home Delaware's

licensing of the patents. But this is irrelevant – the fact that ████████████████

██████████████████████does not give ProMOS control over Home Delaware's

license activities, particularly where the covenant not to sue is a mere standstill agreement that

████████████████████████. DI 177, Ex. 15 at HSC0000314.

Moreover, even if HSC Samoa or Home Delaware's knowledge of the ProMOS

agreement were relevant, which it is not, HSC Samoa could ████████████████████

████████████████████████████. If it ████████████████

████████████, it would know ████████████████, and thus complied with the ProMOS

agreement.

Samsung also argues that "ProMOS's retention of licensing rights is further demonstrated

by the fact that it was ProMOS that received the ████████████████████████

█████████████████████████████████████████████████

██████████████████████" Br. at 14. Once again, Samsung is distorting the facts.

These ████████████████████████████████████████████

█████████████████████████████████████████████████

11

████ pursuant to the 2015 PCA.  As discussed above, the PCA required ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████.  DI 177, Ex. 13 at HSC000304-

305.  Samsung's attempts to characterize ████████████████████████████

█████ are simply wrong.

      **2.**     **ProMOS's** ████████████████████ **Does not Defeat Plaintiff's Standing**

     Samsung also argues that ProMOS's retained ████████████ defeats standing.  DI

175 at 15.  Not so.  The 2013 PTLA granted ProMOS "██████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████" DI 177, Ex. 8 at HSC0001026."  This type of ████████████████ does

not show that "HS[C] failed to acquire all substantial rights" as Samsung contends.  *See*

*Luminara* , 814 F.3d at 1351 ("The retained right to practice a patent is not the same as a retained

right to exclude others from doing so.").  Indeed, the Federal Circuit has repeatedly explained "a

bare licensee, who has no right to exclude others from making, using or selling the licensed

products, has no legally recognized interest that entitles it to bring or join an infringement

action."  *Abbott Labs.,* 47 F.3d at 1131; *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1481-82 (Fed.

Cir. 1990) (non-exclusive licensee has no standing to sue for infringement).

     Once again Samsung's reliance on *Diamond* is inapposite.  In *Diamond*, the Court found

Diamond did not acquire all substantial rights not simply because Sanyo retained a right and

license to make, use and sell products covered by the patents-in-suit, but also because the PATA

did not "even grant Diamond a right to practice the patents-in-suit".   823 F.3d at 620.    In

contrast, ProMOS retained ███████████████████████████████████████ under the

2013 PTLA, HS[C] Samoa received "████████████████████████████████████.

DI 177, Ex. 8 at HSC0001026.   Moreover, Diamond, ████████████████████████

██████, never received the right to assign, which the district court found as further support of a

finding of lack of standing.  *Diamond,* 2015 WL 2088892 at *5.

### 3.    <u>The Retained</u> ███████████████ <u>Is Not Evidence Of Plaintiff's Lack of All Substantial Rights.</u>

Finally, Samsung argues that ProMOS "retained ████████████████████████

████████████████████████ shows that HS[C] Samoa did not acquire all substantial

rights in the asserted patents.  DI 175 at 16.  Again, Samsung relies upon *Diamond*, and again

*Diamond* does not support Samsung's claims.  Notably, the Federal Circuit did not rely on this

retained right as a substantial right that would defeat Diamond's standing.  823 F.3d at 619.

Indeed, the Federal Circuit has repeatedly stated that a financial interest in litigation and

licensing without more does not amount to a substantial right forcing joinder of the patentee.

*Diamond,* 814 F.3d at 1351, *citing Propat Int'l Corp. v. RPost, Inc.,* 473 F.3d 1187, 1191 (Fed.

Cir. 2007); *Vaupel,* 944 F.2d at 875.

### 4.    <u>The Agreement in *Diamond* Was Materially Different from the Agreement in This Action, and *Diamond* does not support Samsung's relief</u>

Samsung relies heavily on *Diamond*, but the agreement at issue in Diamond was

substantially different from the agreement in this case.  These key differences include:

- Diamond was barred from assigning the patents-in-suit to a third party, Home

  Delaware is not;

13

- Diamond received no rights to practice the claimed invention, Home Delaware is not so limited;

- Diamond was required to select targets from a target list, which it could not edit; Home Delaware is not so limited

- Diamond was given a list of targets by Sanyo and was required by Sanyo to take timely action to commercialize the patents-in-suit; Home Delaware is not required to sue anyone.

- Diamond was required to consider the best interests of Sanyo in taking any action, Home Delaware is not so limited.

- Diamond could not license the patents-in-suit jointly with any other patents owned by Diamond, Home Delaware is not so limited

Because the underlying agreement in *Diamond* was substantially more restrictive than the agreement at issue in this action, *Diamond* does not control this case and Samsung's arguments based thereon should be rejected.

**B.    Ownership of, and all substantial rights to, the Asserted Patents were Properly Transferred to Plaintiff.**

Samsung also argues that Plaintiff lacks standing because it cannot show an unbroken chain-of-title in the asserted patents leading to Plaintiff's ownership.  This argument is based on Samsung's conclusion that while ProMOS assigned the asserted patents to "HSI Samoa" via the 2013 PTLA, it was "HSC Samoa" that then assigned the asserted patents to Plaintiff.  But this is merely a typographical error – the replacement of "Corporation" with "Incorporated" in certain documents, nothing more.

The record contains sufficient evidence to show that there is no "Home Semiconductor Incorporated" in Samoa, only "Home Semiconductor Corporation."  First, Mr. Hsu testified in

deposition that ████████████████████████████████████████████

███████████████████████████.  Ting Decl., Ex. A at 123:14-17.  Moreover, other

documents in this case also support the 2013 PTLA's intention to refer to "HSC".  For example,

███████████████████████ required by the 2013 PTLA was made by "Home Semiconductor

Corporation", not "Home Semiconductor Incorporated."  Ting Decl., Ex. D at HSC0001467.

Moreover, the recorded assignment that transferred the ownership rights in the patents-in-suit to

Plaintiff correctly identifies Home Semiconductor Corporation as the party transferring the rights

to the asserted patents to Plaintiff.  DI 177, Ex. 11 at HSC0000337-339.

Further evidence that references to "Home Semiconductor Incorporated" in the various

agreements is nothing more than a typo is found in the letter guarantee that was entered into in

conjunction with the 2013 PTLA.  In the letter guarantee, Plaintiff is erroneously referred to as

Home Semiconductor, Inc., a Delaware Corporation.   DI 177, Ex. 8 at HSC0001033-34.

However, a search of the Delaware public records for "Home Semiconductor Incorporated"

shows no such corporation existing in Delaware, only a Home Semiconductor Corporation.  Ting

Decl., Ex. E.

Samsung refuses to believe that "HSI" does not exist, arguing that "Samoan secrecy

laws" prevent it from verifying whether Home Semiconductor Inc. Samoa exists as a separate

entity.  But Samsung's discovery requests in this action are broad enough to seek corporate

documents for HSI Samoa, if HSI Samoa existed.  Ting Decl., Ex. F at  2 ("Plaintiff', 'you',

'your', 'Home Semiconductor' or 'HSC,' as used herein, means Plaintiff Home Semiconductor

Corp., including, without limitation, each of the plaintiffs and/or declaratory judgment

defendants or counter-defendants in all Related Cases… and any and all other entities that have

ever had an ownership or exclusive interest in any of the Patents-in-Suit.").   And in fact, Home

has stated both to the Court at the February 15, 2019 discovery conference and in its March 21, 2019 Response to Samsung's Interrogatory 25 that "There is not currently, nor has there ever been, an entity called Home Semiconductor, Inc. (Samoa) or an entity called Home Semiconductor, Inc. (Delaware). Ting Decl., Ex. C at 23:12-21, Ex. I at 8-9. Samsung in effect is demanding the production of non-existent corporate documents to show HSI does not exist. But this is impossible, as no corporate formation documents would exist for a non-existent, mistakenly named entity.

All of these documents and testimony lead to only one reasonable conclusion:  that references to "Home Semiconductor Incorporated" and/or "HSI" are simply clerical mistakes which do not affect Plaintiff's standing.  *Special Happy, Ltd. v. Lincoln Imports, Ltd., Inc.,* 2011 WL 2650184, *5, (C.D.CA); *Lincoln Imports, Ltd., Inc. v. Santa's Bext Craft, Ltd.,* 2007 WL 2754530, *1-*2 (S.D.Tex. 2008); *Aevoe Corp. v. AE Tech Co., Ltd,* 13 F.Supp. 1072, 1075-1076. Samsung itself admitted that reference to "HSI" being a typographical error was not surprising. Upon hearing this explanation during the February 15, 2019 discovery hearing, Samsung readily acknowledged that "It's something that doesn't surprise me to hear, and that was one theory, perhaps a typo." Ting Decl., Ex. C at 26:14-21.

Samsung further argues that ████████████████████ pursuant to the 2015 PCA, based on ███████████████, are additional evidence that the non-existent Home Semiconductor Inc. retained ownership of the asserted patents.  As explained above, though, █████████████████ and were unrelated to the asserted Home Delaware Patents.   Rather, ██████████████████████ ███████████████████████████████ and had nothing to do

16

with Home Delaware's patents   Thus, there is no reason for ████████████████ to have gone to Home Delaware.

Finally, Samsung points to the fact that Home Delaware ███████████████████ ████████████████████████████████ as "evidence of the contrived nature of Plaintiff's purported ownership claim".   Again, Samsung has overreached.   The promissory note that Home Delaware provided to HSC as consideration for the transfer of patent rights is not a sham.   The promissory note ██████████████████████████████████ ████████████████████████████████████████████ does not prove that the consideration was a "sham".   DI 177, Ex. 12 ("██████████████████ ████████████████████████████████████████████ ██████████████████████████████" ); Ex. 21 at 137:9-17.

**C.    Any Dismissal of the Case Based on Failure to Join "HSI" Should be Without Prejudice**

"Ordinarily, dismissal for lack of standing is without prejudice."   *Fieldturf, Inc. v. Southwest Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004).   Samsung seeks the extraordinary remedy of dismissal with prejudice in its motion to dismiss.   While Samsung's motion to dismiss should be denied in full because it lacks merit, should this Court grant the motion, it should be without prejudice.

In the event that the Court concludes that ProMOS is a necessary party, it should issue the appropriate order, and not dismiss this action with prejudice.   None of the irrelevant allegations made by Samsung in its brief warrant dismissal with prejudice if the Court's conclusion is based on the fact that ProMOS retains some rights in the patents that require it to be a party.

If the Court concludes that the typographical error causes a fatal gap in title, which it should not, dismissal without prejudice is also not appropriate.  This theory is based on facts that have been publicly available at least since the assignments were recorded with the PTO.  This occurred no later than 2015, yet Samsung, for purely tactical purposes, and without any real justification, waited for more than 4 years to challenge the assignments.  DI 177, Ex. 11.

Finally, Samsung's reliance on *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.,* 676 Fed. App'x 967 (Fed. Cir. 2017) is unpersuasive.  Although Samsung argues that the facts here are similar and *National* is "instructive", these situations are quite different.  *In National,* the agreement ("ACA") that National Oilwell Varco ("NOV") relied upon to show ownership in the patent-in-suit was merely a promise that NOV would be assigned certain rights in the future.  676 Fed. App'x at 971.  The ACA, in fact, did not even cover the transfer of patents, only "physical assets."  *Id.*  Moreover, NOV had previously asserted the patent in a separate case.  *Id.* at 972.  Once the prior defendant had raised the same standing issue, NOV settled, but filed the case against Omron just nine months later.  *Id.*  These facts have no similarity to the issues in the present case and dismissal without prejudice is unwarranted.

## VI.   <u>CONCLUSION</u>

Home Delaware owns the patents and has the full right and authority to bring this action. Nothing in Samsung's motion establishes that ProMOS retained sufficient rights to deprive Home Delaware of standing.  Likewise, the existence of a typographical error replacing "Corporation" with "Incorporated" does not break the chain of title or warrant dismissal. Samsung's motion should be denied.

ME1 30498276v.1

Dated:  May 22, 2019

MCCARTER ENGLISH, LLP

/s/ Daniel M. Silver

Michael P. Kelly (#2295)

*OF COUNSEL*:

Daniel M. Silver (#4758)

Alexandra M. Joyce (#6423)

Craig R. Kaufman

Renaissance Centre

Jerry Chen

405 N. King Street, 8th Floor

Kevin Jones

Wilmington, DE 19801

Michael C. Ting

(302) 984-6385

TECHKNOWLEDGE LAW GROUP LLP

mkelly@mccarter.com

100 Marine Parkway, Suite 200

dsilver@mccarter.com

Redwood Shores, CA 94065

ajoyce@mccarter.com

(650) 517-5200

*ckaufman@tklg-llp.com*

*Counsel for Plaintiff*

*jchen@tklg-llp.com*

*Home Semiconductor Corporation*

*kjones@tklg-llp.com*

*mting@tklg-llp.com*

19

## CERTIFICATE OF SERVICE

I, Daniel M. Silver, hereby certify that on May 22, 2019, a true copy of the foregoing

documents was served via electronic mail upon the following counsel of record:

Adam W. Poff
Pilar G. Kraman
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendants Samsung
Electronics Co., Ltd., Samsung Electronics
America, Inc., Samsung Semiconductor, Inc.
and Samsung Austin Semiconductor, LLC*

Matthew M. Wolf
Jin-Suk Park
Ali R. Sharifahmadian
John Christopher Moulder
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001-3743
Matthew.wolf@arnoldporter.com
jin.park@arnoldporter.com
ali.sharifahmadian@arnoldporter.com
chris.moulder@arnoldporter.com

Philip W. Marsh
Michael D.K. Nguyen
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
philip.marsh@arnoldporter.com
michael.nguyen@arnoldporter.com

Mishele Kieffer
ARNOLD & PORTER KAYE SCHOLER LLP
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
mishele.kieffer@arnoldporter.com

Jennifer Sklenar
Ryan M. Hashimoto
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
(213) 243-4000
Jennifer.sklenar@arnoldporter.com
Ryan.hashimoto@arnoldporter.com

*Counsel for Defendants Samsung Electronics
Co., Ltd., Samsung Electronics America, Inc.,
Samsung Semiconductor, Inc. and Samsung
Austin Semiconductor, LLC*

Dated: May 22, 2019 /s/ Daniel M. Silver
Daniel M. Silver (#4758)