# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOME SEMICONDUCTOR CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG SEMICONDUCTOR, INC. AND<br>SAMSUNG AUSTIN SEMICONDUCTOR, LLC,<br><br>    Defendants. | C.A. No. 13-2033-RGA<br><br>**JURY TRIAL DEMANDED**<br><br><br>REDACTED -- PUBLIC VERSION |

## SAMSUNG'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS FOR LACK OF STANDING

*Of Counsel*:

ARNOLD & PORTER KAYE SCHOLER LLP
Matthew M. Wolf
Ali R. Sharifahmadian
Jennifer A. Sklenar*
Jin-Suk Park
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
(202) 942-5000
matthew.wolf@arnoldporter.com
ali.sharifahmadian@arnoldporter.com
jennifer.sklenar@arnoldporter.com
jin.park@arnoldporter.com

*Admitted in NY and CA only; practice limited to matters before federal courts and federal agencies

Ryan M. Nishimoto
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
(213) 243-4000
ryan.nishimoto@arnoldporter.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendants Samsung
Electronics Co., Ltd., Samsung Electronics
America, Inc., Samsung Semiconductor,
Inc., and Samsung Austin Semiconductor,
LLC*

Dated: June 5, 2019

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. PROMOS RETAINED SUBSTANTIAL RIGHTS IN THE ASSERTED
PATENTS AND ITS ABSENCE FROM THIS CASE DEFEATS STANDING .............. 2

III. PLAINTIFF HAS FAILED TO SHOW THAT HSI TRANSFERRED RIGHTS
IN THE ASSERTED PATENTS TO PLAINTIFF ............................................................. 6

IV. DISMISSAL SHOULD BE WITH PREJUDICE ............................................................. 9

V. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Diamedix Corp*,
    47 F.3d 1128 (Fed. Cir. 1995) ........................................................................................... 3

*Aevoe Corp. v. AE Tech Co., Ltd*,
    13 F. Supp. 3d 1072 (D. Nev. 2014) ............................................................................. 7, 8

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
    823 F.3d 615 (Fed. Cir. 2016) ....................................................................................... 2, 6

*Gemtron Corp. v. Saint-Gobain Corp.*,
    572 F.3d 1371 (Fed. Cir. 2009) ......................................................................................... 8

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001) ..................................................................................... 3, 6

*Intuitive Surgical, Inc. v. Computer Motion, Inc.*
    214 F.Supp. 2d 433 (D. Del. 2002) ............................................................................... 3, 4

*Lincoln Imps., Ltd., Inc. v. Santa's Best Craft, Ltd.*,
    No. H-07-2803, 2008 WL 2754530 (S.D. Tex. July 14, 2008) ........................................ 8

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    No. 2018-1581, 2019 WL 2292485 (Fed. Cir. May 30, 2019) ................................. passim

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
    676 Fed. App'x 967 (Fed. Cir. 2017) .............................................................................. 10

*Special Happy, Ltd. v. Lincoln Imps., Ltd., Inc.*,
    No. SACV 09-00074-MLG, 2011 WL 2650184 (C.D. Cal. July 6, 2011) ....................... 8

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009) ......................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 19 ................................................................................................................... 1, 9

**I.     INTRODUCTION**

Samsung set forth in its Motion the manifold infirmities with Plaintiff's standing claim, and Plaintiff's Opposition utterly fails to rebut any of them.

First, the only reasonable conclusion from the evidence presented is that ProMOS retained substantial rights in the asserted patents when it purported to transfer them to HSI in February 2013.  Although Plaintiff attempts to minimize the impact of these rights, its arguments are contrary to governing law, as confirmed just last week by the Federal Circuit in its May 30, 2019, decision in *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, No. 2018-1581, 2019 WL 2292485 (Fed. Cir. May 30, 2019).  Second, the circumscribed rights that HSI did obtain from ProMOS were not subsequently transferred to Plaintiff because of defects in the named entities in the governing agreements.  While Plaintiff tries to dismiss this as a "mere typographical error," it fails to explain why it has not sought to correct the alleged error.  The defects in the agreements cannot be resolved simply by a change to the entity name in the manner proposed by Plaintiff.  And there is another even more significant discrepancy that Plaintiff never addresses:  Plaintiff's sole representative Mr. Hsu repeatedly represented in agreements while this case was pending that *a Samoan entity* and not Plaintiff (*a Delaware entity*) owns the asserted patents, apparently in order to reap their financial benefit in the tax haven of Samoa.

Given that Plaintiff lacks *any* rights to the asserted patents, the case must be dismissed.  Even if the Court decides that Plaintiff possesses *some* rights, Plaintiff has not sought the joinder of ProMOS (or addressed the requirements of Rule 19), and thus dismissal remains appropriate.  And because Plaintiff/Mr. Hsu seem to have purposefully sown confusion regarding the true ownership and control of the asserted patents, dismissal should be with prejudice.

## II. PROMOS RETAINED SUBSTANTIAL RIGHTS IN THE ASSERTED PATENTS AND ITS ABSENCE FROM THIS CASE DEFEATS STANDING

Samsung demonstrated in its Motion that ProMOS retained substantial rights in the asserted patents, including (1) the right to authorize certain enforcement activities, (2) the ████████, and (3) the ████████████████████████████████. D.I. 176 at 12-16.

As its primary response, Plaintiff points to language in the PTLA that ProMOS ████ ████████████████████████████████" to the asserted patents, and similar statements in the September 23, 2013, Patent Assignment (D.I. 177, Ex. 9). D.I. 192 at 6-7. But these statements do not end the standing inquiry. What matters is the overall legal effect of the provisions set forth within the governing agreements. *Lone Star*, 2019 WL 2292485, at *2 ("Th[e] inquiry depends on the substance of what was granted rather than formalities or magic words.") (internal citations omitted); *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016) ("We have not allowed labels to control by treating bare formalities of 'title' transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred.").

As Samsung showed, there was a letter agreement to the PTLA that sets forth significant rights retained by ProMOS in its agreements with HSI. Among other things, HSI ████████ ████████████████████████████████████████████████████████ ████████ *See* D.I. 177, Ex. 8 at 1033. This is not merely a "minor restriction," as Plaintiff argues. D.I. 192 at 10. Indeed, where a transferor like ProMOS retains the right ████ ████████████████████████████████ the Federal Circuit has found that the transferor did not "fully transfer the right to enforce its patents." *Lone Star*, 2019 WL 2292485, at *5. It does not matter whether such restrictions are related to only two entities or parties with whom the transferor has a pre-existing business, distinctions that Plaintiff proffers without any

2

supporting legal support.[1]  "[A] transferee that receives all substantial rights from a transferor would never need consent from the transferor to file suit because such an assignment essentially transfers titles in the patent to the transferee." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001).

Plaintiff attempts to downplay this provision by asserting that it is no different than if ▮▮▮▮▮ had previously been licensed to the asserted patents." D.I. 192 at 10.  But that argument incorrectly equates existing licenses with prospective control.  Under the situation posited by Plaintiff, the transferee receives an assignment subject to already-executed licenses, and the transferor retains no ongoing control.  But under the actual contractual language here, ProMOS *did* retain ▮▮▮▮▮, and therefore did not transfer all "right, title and interest." *Lone Star*, 2019 WL 2292485, at *3.

Even if Plaintiff's analogy were valid, the two cases cited by Plaintiff undermine its argument.  In *Abbott Labs. v. Diamedix Corp.*, for example, the Federal Circuit noted that the transferred patent rights were "subject to prior licensees," which weighed *against* a finding that the transferee had acquired all substantial rights.  47 F.3d 1128, 1132 (Fed. Cir. 1995).  The *Abbott* court noted this restriction in concluding that the transferee "therefore may not sue on its own for infringement." *Id.* at 1132.  Similarly, in *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, the district court found that transferee "has standing to pursue this action *as co-plaintiff* with [transferor]" where an exclusive license was "subject only to prior licenses and [transferor]'s right to practice the patents for research and development purposes." 214 F. Supp. 2d 433, 440

---

[1] In arguing that the right retained by ProMOS to authorize enforcement actions is minor because it only applies to two companies (D.I. at 192 at 10), Plaintiff neglects to explain the total number of companies that make and/or sell the types of products that it accused of infringement.  In actuality, the two companies as to which ProMOS retained rights represent a significant portion of the pool of prosepective infringers/licensees.

3

(D. Del. 2002) (emphasis added).  These cases do not, as Plaintiff suggests, "indicate[]" that such a restriction "is not fatal to a transferee's standing to bring suit alone."  D.I. 192 at 10.

Here, ProMOS not only retained rights to the asserted patents as against third parties, it exercised those rights in 2017, well after this litigation was filed, in its dealings with ▓▓▓▓.  ProMOS orchestrated at least ▓▓▓▓▓▓▓ for a November 21, 2017, Covenant Not-to-Sue (D.I. 177, Ex. 15), for which neither Mr. Hsu nor by extension any of his entities provided input, even though it resulted in a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  D.I. 177, Ex. 22 at 242:14-243:7, 244:8-17, 267:2-25, 270:3-271:22, 272:3-273:10.  Plaintiff baldly asserts—through attorney argument alone—that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  See D.I. 192 at 11-12, 16-17.  Yet, Plaintiff makes no effort to address the contrary deposition testimony of its witness.  D.I. 176 at 9-10, 14.  Plaintiff's alternative explanation for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (see D.I. 192 at 11-12)—is similarly contrary to Mr. Hsu's testimony, as well as Plaintiff's representations to this Court. [2]

Plaintiff further attempts to dismiss the importance of ProMOS's involvement and control over the Covenant-Not-to-Sue, asserting it is simply a "standstill agreement" and thus "cannot demonstrate control by ProMOS over Home Delaware's licensing."  D.I. 192 at 11.  Yet,

---

[2] Plaintiff's counsel represented to the Court that Mr. Hsu knew nothing about the negotiations between ProMOS and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and it was on that basis that Plaintiff's counsel redacted and withheld all communications on the subject.  D.I. 177, Ex. 20 at 32:22-33:2, 34:16-38:19.  Mr. Hsu further testified that he has never had any knowledge of the terms of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ D.I. 177, Ex. 22 at 255:13-256:1, 258:4-7, 259:2-18, 262:15-21, 264:7-24; D.I. 177, Ex. 20 at 38:1-17.  Moreover, the PCA appears to have expired in March 2016 (D.I. 177, Ex. 13 at §§ 2(c), 6(a)), before ProMOS entered into its own negotiations with ▓▓▓▓ in late 2017 (D.I. 177, Ex. 14).

4

a covenant not-to-sue is no different from a nonexclusive license in that it conveys freedom from suit on a patent. *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009). Plaintiff also ignores Mr. Hsu's testimony that he would need to ask ProMOS to determine whether ▬▬▬▬▬ since expiration of the Covenant Not-to-Sue. D.I. 177, Ex. 22 at 266:7-22, 274:5-11. This testimony plainly shows that even Plaintiff's sole representative understood that ProMOS retained control over licensing of the asserted patents to certain entities and thus did not assign to HSI all substantial rights. D.I. 176 at 14-15.³

Plaintiff also elevates form over substance in arguing that the letter agreement did not require HSI to take into account ProMOS's "best interests." D.I. 192 at 9. But that is exactly what it does by (a) prohibiting HSI from ▬▬▬▬▬ ; (b) obligating HSI to ▬▬▬▬▬ . D.I. 177, Ex. 8 at 1033. Thus, Plaintiff's efforts at distinguishing *Diamond Coating* are misplaced. *See Diamond Coating Techs.*, 823 F.3d at 620-21; *see also Intellectual Prop. Dev.*, 248 F.3d at 1345 (noting "[transferor]'s right to permit infringement in certain cases" and "the requirement that

---

³ Plaintiff also tries to diminish the fact that the Covenant Not-to-Sue was expressly conditioned on ▬▬▬ compliance with the payment terms of the ▬▬▬▬▬ , the terms of which Mr. Hsu had no knowledge. D.I. 176 at 14. Plaintiff argues that this condition is irrelevant because Mr. Hsu would eventually learn whether ▬▬▬ performed, given another agreement in place with ProMOS. D.I. 192 at 11. Yet, Plaintiff's own argument shows that Mr. Hsu lacked control and basic information about agreements relating to the asserted patents and that he was relegated to receiving information from ProMOS after-the-fact.

5

[transferor] consent to certain actions and be consulted in others" as relevant to the conclusion that the agreement "transfers fewer than all substantial rights in the [asserted] patent").

As for the other rights retained by ProMOS, *i.e.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* D.I. 176 at 15-16), Plaintiff argues that they are each insufficient to defeat Plaintiff's standing *on their own*. D.I. 192 at 12-13. Whether either of these rights—standing alone—is sufficient to show that ProMOS retained substantial rights is not the issue. These retained rights, taken together with the prohibitions and obligations on HSI, as further demonstrated by ProMOS's later licensing and enforcement activity, show that—at a minimum—ProMOS retained substantial rights in the asserted patents such that it must be present in any suit on these patents. *See Diamond Coating*, 823 F.3d at 618-19; *see also Lone Star*, 2019 WL 2292485, at *6 ("While [the retention of economic interest in and the right to practice the transferred patents] may not be dispositive alone, together they suggest that [transferor] did not transfer all substantial rights in its patents to [transferee].").

### III. PLAINTIFF HAS FAILED TO SHOW THAT HSI TRANSFERRED RIGHTS IN THE ASSERTED PATENTS TO PLAINTIFF

Plaintiff has failed to meet its burden to show that it received any rights in the asserted patents. As Samsung explained in its motion, HSI never transferred its interest in the asserted patents to Home Semiconductor Corporation of Samoa ("HSC Samoa"), and thus, HSC Samoa could not transfer rights that it did not have to Plaintiff. D.I. 176 at 16-18. In response, Plaintiff essentially seeks reformation of the PTLA, arguing that references to HSI are merely "clerical mistakes" (D.I. 192 at 16), basing its assertion on Mr. Hsu's testimony that he had not heard of HSI and that references to HSI "*might* be wrong." D.I. 193, Ex. A at 123:14-17 (emphasis added). His equivocal testimony does little to show that references to HSI should instead be HSC Samoa, particularly in light of the fact that, even after Mr. Hsu signed the PTLA containing

the supposed typographical error, he continued to sign agreements on behalf of HSI, including the March 25, 2015, Patent Cooperation Agreement ("PCA") and the Covenant Not-to-Sue. D.I. 177, Ex. 13 at 302, 310, Ex. 15 at 313, 318. Indeed, since the purported assignment to Plaintiff in 2013, Mr. Hsu has continued to represent that HSI—not Plaintiff—owns the asserted patents. Plaintiff does not address this fact in its opposition. Similarly, the various references to HSI, HSC Samoa, and Plaintiff in the agreements and bank records do nothing to clear up the supposed typographical error. *See* D.I. 193, Exs. D, E; D.I. 177, Exs. 8, 11

Even if Plaintiff could retroactively correct the agreements signed by Mr. Hsu to change all references from HSI (*i.e.*, Home Semiconductor, **Inc.** of Samoa) to HSC Samoa (*i.e.*, Home Semiconductor **Corporation** of Samoa), this does not resolve the inconsistencies. Mr. Hsu has not only represented that HSI (rather than Plaintiff) is the owner of the asserted patents, he has repeatedly signed agreements that represent that the owner of the asserted patents is a Samoan company (and not a Delaware company). *See, e.g.*, D.I. 177, Ex. 13 at 302, Ex. 15 at 313. Plaintiff offers no explanation whatsoever for this. And Plaintiff's attorney argument cannot negate its 30(b)(6) testimony that one of Mr. Hsu's Samoan entities—not Plaintiff— ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to the asserted patents during this litigation, further confirming that title to the asserted patents did not pass to Plaintiff in 2013. D.I. 176 at 17-18.

The cases that Plaintiff cites in an effort to downplay the discrepancy in entity names are inapposite. In *Aevoe Corp. v. AE Tech Co., Ltd.*, the court found a recorded assignment to be presumptively valid where plaintiff corrected a typographical error in the relevant agreement and recorded it with the PTO *before filing suit*. 13 F. Supp. 3d 1072, 1076 (D. Nev. 2014).[4] Here, the recorded assignments show a break in title, and Plaintiff did not seek to correct such error.

---

[4] Plaintiff incorrectly cited this case as *Aevoe Corp. v. AE Tech Co., Ltd*, 13 F. Supp. 1072.

7

*See* D.I. 177, Exs. 2, 3, 9, 10.  Plaintiff is not entitled to any presumption that a valid assignment exists and bears the burden of proving that it holds sufficient rights in the patents to maintain standing.  *See Aevoe Corp.*, 13 F. Supp. 3d at 1075.

Plaintiff's remaining case citations also miss the mark.  Both involved the same patent assignment document that contained references to a "design" patent, when it should have made reference to a "utility" patent that was otherwise described within the assignment.  *Special Happy, Ltd. v. Lincoln Imps., Ltd., Inc.*, No. SACV 09-00074-MLG, 2011 WL 2650184, at *5 (C.D. Cal. July 6, 2011); *Lincoln Imps., Ltd., Inc. v. Santa's Best Craft, Ltd.*, No. H-07-2803, 2008 WL 2754530, at *1-*2 (S.D. Tex. July 14, 2008).  The court found the descriptive information to clearly and unambiguously assign the utility patent at issue, and not some unidentified design patent.  *Id.*  In contrast, the agreements signed by Mr. Hsu do not clearly and unambiguously show an intent to transfer the asserted patents from ProMOS to HSC Samoa and then from HSC Samoa to HSC Delaware, particularly in view of the multiple *subsequent* agreements he signed referring to HSI ("a Samoan entity") as the owner of the asserted patents.  D.I. 176 at 7-9.  For all purposes except this litigation, Mr. Hsu has continued to act as if there has been no further transfer of rights in the asserted patents beyond ProMOS's transfer to HSI.[5]

Moreover, as Samsung showed, Plaintiff never paid the now-expired ▮▮▮ Promissory Note (D.I. 177, Ex. 12) that was used as consideration for the purported transfer of the asserted patents from HSC Samoa to Plaintiff.  D.I. 176 at 7.  According to Plaintiff, it will pay this note and accrued interest "once it has sufficient funds."  D.I. 192 at 17.  But once again,

---

[5] Plaintiff's remaining arguments fare no better.  Plaintiff's interrogatory response asserting that HSI has never existed (D.I. 193, Ex. I at 8-9) is at best unreliable given that Mr. Hsu was uncertain at deposition on this issue (D.I. 193, Ex. A at 123:14-17).  And arguments made by counsel are not evidence (D.I. 192, Ex. C at 23:12-21).  *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009).

this argument ignores its own 30(b)(6) testimony that one of Mr. Hsu's Samoan entities, rather than Plaintiff, received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ while this litigation was pending. D.I. 177, Ex. 22 at 242:14-243:7, 244:8-17, 270:3-271:22, 272:3-273:10. If Plaintiff truly owned the patents, such payments should have been made to Plaintiff in Delaware, and it would have had the funds to repay the Promissory Note.

### IV.  DISMISSAL SHOULD BE WITH PREJUDICE

As a threshold issue, Plaintiff's suggestion that Samsung's motion is somehow untimely, because dismissal could have been sought in 2015, is without merit. Plaintiff ignores the fact that it did not produce the agreements at issue here until October 2018 and that Mr. Hsu's deposition did not occur until March 2019. *See* D.I. 177, Ex. 21 at 1, Ex. 22 at 187.

Dismissal is appropriate because Plaintiff does not possess any rights to the asserted patents and thus lacks constitutional standing because it is not even an exclusive licensee. *Lone Star*, 2019 WL 2292485, at *2. Even if the Court decided that Plaintiff possessed *some* rights, substantial rights were retained by ProMOS, and it is a necessary party. *Id.* at *8-*9. Plaintiff, however, did not seek to join ProMOS before the October 7, 2014 joinder deadline, and it has not sought to join ProMOS since, nor has it otherwise addressed the related requirements of Rule 19. *Id.* at *9 n.8. To the contrary, Plaintiff appears to agree that dismissal *is* the appropriate remedy in the event that the Court concludes that ProMOS retained substantial rights. Plaintiff merely disputes that dismissal should be with prejudice. D.I. 192 at 17.

While dismissal for lack of standing is ordinarily without prejudice, it should be with prejudice here because Plaintiff continues to spin a web of confusion in an effort to hide who actually controls the asserted patents. Among other things, Plaintiff makes no effort to address Mr. Hsu's dramatically shifting testimony regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. D.I. 176 at 5. Plaintiff also fails to explain why Mr. Hsu repeatedly signed agreements after this suit was filed, representing that *a Samoan entity* (*i.e.,* HSI), was the owner of the asserted patents, or why Mr. Hsu ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ instead of an account associated with Plaintiff. Plaintiff's opposition goes so far as to ask the Court to ignore Plaintiff's 30(b)(6) testimony and instead accept as "fact" wholly unsupported attorney arguments. For example, Plaintiff argues that "HSC Samoa and ProMOS entered into negotiations with ▇▇▇▇" that resulted in the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and that this was the reason for the ▇▇▇t ▇▇▇ to Mr. Hsu's Samoan entity rather than for the asserted patents. D.I. 192 at 6. Not only is this argument contrary to Plaintiff's 30(b)(6) testimony (*see* D.I. 177, Ex. 22 at 242:14-243:7, 244:8-17, 270:3-271:22, 272:3-273:10), it is contrary to Plaintiff's counsel's prior representations to the Court. D.I. 177, Ex. 20 at 38:1-17.

At a minimum, Plaintiff has failed to present a consistent picture of ownership, which Plaintiff does not address in its efforts to distinguish *National Oilwell*. There, the court affirmed dismissal with prejudice, noting the plaintiff's failure to "present a consistent picture of ownership … throughout (1) the USPTO records, (2) this case, and (3) three separate previous litigations." *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 Fed. App'x 967, 972 (Fed. Cir. 2017). Plaintiff similarly fails to present a consistent picture of ownership of the asserted patents throughout (1) the USPTO records, (2) representations made in the PCA and the Covenant-Not-to-Sue, and (3) this case. And the result should be the same.

## V. CONCLUSION

For the reasons set forth above, Samsung respectfully requests that the Court dismiss this action with prejudice.

Dated: June 5, 2019

*Of Counsel*:

ARNOLD & PORTER KAYE
SCHOLER LLP

Matthew M. Wolf
Ali R. Sharifahmadian
Jennifer A. Sklenar*
Jin-Suk Park
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
Phone: 202-942-5000
Facsimile: 202-942-5999
(202) 942-5000
matthew.wolf@arnoldporter.com
ali.sharifahmadian@arnoldporter.com
jennifer.sklenar@arnoldporter.com
jin.park@arnoldporter.com

* Admitted in NY and CA only; practice limited to matters before federal courts and federal agencies

Ryan M. Nishimoto
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
(213) 243-4000
ryan.nishimoto@arnoldporter.com

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC*

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, hereby certify that on June 10, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following counsel:

>Michael P. Kelly, Esquire
>Daniel M. Silver, Esquire
>Alexandra M. Joyce, Esquire
>MCCARTER ENGLISH LLP
>405 N. King Street, 8th Floor
>Wilmington, DE 19801
>*mkelly@mccarter.com*
>*dsilver@mccarter.com*
>*ajoyce@mccarter.com*
>
>Kai Tseng
>Craig Kaufman
>James H. Lin
>Kevin Jones
>Michael C. Ting
>TechKnowledge Law Group LLP
>1521 Diamond Street
>San Francisco, CA 94131
>*ktseng@tklg-llp.com*
>*ckaufman@tklg-llp.com*
>*jlin@tkg-llp.com*
>*kjones@tklg-llp.com*
>*mting@tklg-llp.com*
>
>Jerry Chen
>TechKnowledge Law Group LLP
>100 Marine Parkway, Suite 200
>Redwood City, CA 94065
>(650) 517-5200
>*jchen@tklg-llp.com*
>
>*Attorneys for Plaintiff*

I further certify that on June 10, 2019, I caused a true and correct copy of the foregoing document to be served via e-mail on the above-listed counsel.

14864119.1

2

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

/s/ *Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
302-571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendants*

14864119.1